[No. C.D. 3096.    En Banc.    October 4, 1973.]

*In the Matter of the Disciplinary Proceeding Against*
B. ROLF ESPEDAL, *an Attorney at Law.*

*Robert O. Wells, Jr.* and *Richard Broz,* for Bar Association.

STAFFORD, J.—B. Rolf Espedal was admitted to the practice of law in this state on September 10, 1947. On May 5, 1958 he was suspended from practice for nonpayment of dues and was not reinstated until August 1965.

On October 29, 1965 respondent was reprimanded for: (1) failing to timely file several personal federal income tax returns; and, (2) failing to take timely action in several cases to the inconvenience of some clients and to the detriment of others. On February 10, 1970, he again came to the attention of the Washington State Bar Association (hereinafter called the Bar). On this occasion he was censured both for his willful failure to perform an agreement with another attorney and for his failure to cooperate in the Bar's investigation thereof.

In the instant case the Bar first served respondent with a

formal complaint containing one charge. Thereafter, on August 31, 1972, the Bar served respondent with an amended formal complaint containing two additional charges.

Respondent appeared before the panel pro se in October of 1972. After taking evidence the hearing panel made findings, conclusions and recommendations which were adopted by the Bar's Disciplinary Board (hereinafter called the Board).

The Board has recommended that respondent be reprimanded on the first item of the amended complaint and that he be permanently disbarred from the practice of law on the second and third items.

Following are the undisputed facts upon which the Board's recommendations are based.

*Item One*: Respondent represented Mrs. Furseth in a personal injury action which, in April of 1971, resulted in a settlement. Defendant's draft was made payable to respondent and Mrs. Furseth. Respondent obtained her endorsement thereon and deposited the monies in his trust account. Thereafter, Mrs. Furseth sought repeatedly, but unsuccessfully, to obtain her funds. They were finally delivered July 15, 1971, after opposing counsel interceded. Respondent paid her with a bank manager's check purchased with resources from a joint savings account unrelated to respondent's law practice.

After the proceeds of the settlement draft were deposited in his trust account respondent improperly used them for his own purposes. The record discloses that the improper withdrawal of money was caused primarily by respondent and his wife, each withdrawing funds from the trust account as they felt fees were due in this and other cases. Frequent duplicative withdrawals went unchecked.

The Board concluded respondent had violated Discipline Rules for Attorneys 1.1(c) and 1.1(j) because his professional conduct failed to comply with Canons of Professional

Ethics 11 and 21 which were in effect at the time.[1] CPE 11 stated:

> Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him.

CPE 21 stated:

> It is the duty of the lawyer not only to his client, but also to the courts and to the public to be punctual in attendance, and to be concise and direct in the trial and disposition of causes.

*Item Two*: In November 1969, Mr. Alf Ness retained respondent to probate the estate of a brother who had died intestate. Shortly thereafter Mr. Ness was issued letters of administration. Subsequently, respondent neither filed an inventory nor published notice to creditors. Further, by the time of the final hearing herein, no written appraisal had been filed although respondent had had the information available since the summer of 1972.

During the course of the probate, respondent filed a petition to sell, and in 1970 sold several assets of the estate for $9,300. The proceeds were placed in respondent's trust account.

Following the sale of assets in 1970, Mr. Ness made repeated unsuccessful requests for respondent to close the estate and distribute it to the legatees, who were Mr. Ness and four other persons living in Norway. Respondent also failed to file a state inheritance tax report and made no provision for payment of the tax. A "Final Account and Petition for Distribution" prepared in mid-1972 purported to make an accounting and requested distribution but failed to provide for payment of penalties assessed for late payment of the inheritance tax.

Furthermore, although respondent and Mr. Ness agreed

---

[1]The Canons of Professional Ethics were, following the violation reported in Item One, superseded by the Code of Professional Responsibility on January 1, 1972.

that Mr. Ness' distributive share of the estate would include the deceased's residence, respondent failed to prepare the necessary conveyance to transfer the residence. Respondent did send the four legatees in Norway checks in payment of their distributive shares. The checks were drawn on respondent's trust account. However, on June 14, before the checks could be presented for payment, the trust account was garnished.

Apparently, Mr. Ness was not told about the trust account's status. Since he had decided to go to Norway, Mr. Ness planned to deliver the checks personally. Accordingly, on June 29, 1972, he asked respondent to issue duplicate checks for that purpose. Respondent was also instructed to pay the inheritance tax.

Respondent complied and issued checks, totaling approximately $9,700, on his trust account, although the account had a balance of only $242. All checks were dishonored when presented for payment. In fact, it developed that the account was actually overdrawn nearly $4,500 and was deficient an additional $2,000 to $4,000 because of respondent's withdrawal of monies held in trust for other clients. Respondent has no specific records indicating what funds should be in the trust account.

Between March of 1970 and June of 1972 respondent made withdrawals from the trust account without notice to or permission from the administrator of the estate. Respondent converted the estate's funds to his own use and commingled them, or a substantial part thereof, with his own monies. Respondent has not been able to account to the administrator or the legatees of the Ness estate for the monies received by him.

The Board concluded respondent violated DRA 1.1(a) involving moral turpitude; DRA 1.1(c) concerned with violation of his oath and duties as an attorney; and, DRA 1.1(j) in that he violated Canons of Professional Ethics 11 and 21 (set out more fully in Item One);[2] and, Code of

[2]*See* note 1 above insofar as applicable to Item Two.

Professional Responsibility DR 9-102 which deals with preserving the identity of funds and property of a client.

*Item Three*: The Board found the matters related in Items One and Two manifest a course of conduct which demonstrates unfitness to practice law. It concluded he has violated DRA 1.1 (m).

We agree as to Items Two and Three that respondent should be permanently disbarred from the practice of law in this state. We do not agree with the Board's recommendation that he merely be reprimanded for the violations set forth in Item One.

■ We always give serious consideration to recommendations of the Board in disciplinary proceedings. Nevertheless, they are only advisory. The ultimate responsibility for determining the nature of discipline rests solely with this court. *In re Kennedy*, 80 Wn.2d 222, 240, 492 P.2d 1364 (1972).

■ As we said in *In re Kennedy, supra* at 240:

In making the determination we considered the seriousness and circumstances of the offense as well as the following standards:
1. A punishment of the offender, which should be sufficient to prevent reoccurrence.
2. A penalty sufficient to deter other practitioners from engaging in such conduct.
3. Punishment sufficient to restore and maintain respect for the honor and dignity of the profession, and to assure those who seek the services of lawyers that the penalties for unprofessional conduct will be strictly enforced.

With the foregoing standards in mind and considering the facts of this case, we decline to follow the Board's recommendation as to Item One.

B. Rolf Espedal shall be permanently disbarred from the practice of law in the state of Washington as to each of the three items charged in the amended formal complaint.

We confirm the statement of costs claimed by the Bar pursuant to DRA 7.1, *et seq.*

HALE, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.